BOUTALL, Judge.
This is a suit by a passenger on a city transit bus, seeking recovery for personal injuries sustained while attempting to depart the bus. Jury trial was had resulting in a verdict of $5,000.00 in favor of plaintiff, and the defendant appeals. Plaintiff has answered seeking an increase in the amount of the award.
The facts show that Mercedes Alexander was a passenger on a New Orleans Public Service, Inc., bus whose route was along Esplanade Avenue. As the bus reached one of its regular stops, several passengers were in the process of leaving the bus through the rear door. One passenger successfully departed the bus, and as plaintiff attempted to follow, the bus began to roll forward and the rear door attempted to close, causing plaintiff to fall. Upon hearing several people yell to stop the bus, the bus driver applied the brakes stopping the bus. It was later determined that the brake interlock system, which automatically applies the brakes before the rear door can be opened, and keeps braking pressure up until the rear door shuts, had failed.
The defendant-appellant does not seriously contest that the bus did roll forward while the passengers were attempting to alight, and in fact, the testimony of the bus driver, and the maintenance manager of *539 defendant clearly show that the brake interlock system, which is designed to prevent the bus from moving while the door is open, did fail because of an air leak. The main reliance of appellant is upon its contention that there was in fact no accident to Miss Alexander, that she did not fall, and did not receive any injuries. Appellant refers us to the cases of Vidal v. Liberty Mutual Insurance Company, 232 So.2d 786 (La.App. 4th Cir., 1970), and Johnson v. Shreveport Rys. Co., 50 So.2d 655 (La.App. 2nd Cir., 1951).
We do not believe that the rationale of those cases are applicable here. The evidence shows without contradiction that, due to the failure of the interlock brake system and the failure of the bus driver to keep his foot on the regular brake pedal, not only did the bus roll forward unexpectedly, and just as unexpectedly stop when the driver braked, but also that as the passenger was attempting to alight, the door began shutting upon her, all of which caused her to fall. There are some discrepancies in the testimony of the various witnesses as to the extent of plaintiff’s fall, but there is n<?doubt that she did fall.
Plaintiff contends that she fell completely to the floor with one leg doubled under her and her other leg sticking out through the doorway. The passenger who alighted in front of her testified that she noticed something wrong with the door as she stepped down and that the door was closing on the passenger behind her (who was plaintiff). She thereupon turned, and seeing that passenger fighting to open the door or to keep it open, she attempted to pry the door open from her side. Although she did not notice plaintiff’s leg protruding from the door, she could see through the crack in the door that plaintiff was in a slumped over or stooped position at one time.
The other major witness was the passenger behind plaintiff who testified that plaintiff fell while struggling with the door as the bus lurched forward, but he could not remember if she fell completely to the floor, and was under the impression that he caught her as she fell to the side against the rail. It might be remarked that both of these witnesses had apparently no connection with the case and demonstrated that they could not remember all of the facts and events, because it was some three years from the date of accident to the date of trial. Obviously the jury found that there was an accident to Miss Alexander, and there is ample testimony in support of such a finding.
As a result of her fall, Miss Alexander began to experience pain in her head, neck, rib cage, and right knee. She sought the services of Dr. Ernest Cherrie, Sr., who treated her from December 13, 1968 to February 12, 1969. Dr. Cherrie found that she suffered from a limitation of full motion in her knee and her neck, and began a conservative treatment with sedatives and diathermy.
On December 17, 1968, she was examined by Dr. Charles W. Peterson at the request of the defendant. He concluded that she suffered a mild strain of the rib cage and the paravertebral muscles of the upper back, and mild strain of the right knee.
Although the other complaints of Miss Alexander cleared up shortly, the complaints about her knee and neck persisted, and did not respond to treatment satisfactorily. As a result,, ^she has been referred to several doctors for consultation and for further treatment, i
In February, Dr. Cherrie concluded that he could afford Miss Alexander no further relief and referred her to Dr. Emile E. Riley, Jr., for further treatment. Dr. Riley concluded that she needed hospitalization for a complete examination and for relief of her symptoms. Accordingly, she was hospitalized in Flint-Goodridge Hospital, from March 11, 1969, to March 16, 1969. During this period she was thoroughly examined and the doctor concluded that it was necessary that she continue to remain in the hospital for further treatment. His initial diagnosis was that, she suffered from a cervical strain with muscle spasm present *540 and an internal derangement of the right knee. However, the financial status of Miss Alexander was such that she was forced to leave the hospital for lack of funds. Dr. Riley then began treating her in his office and engaged upon an intensive course of treatment. She showed gradual improvement, and the treatments became less frequent, and by the last part of July, Dr. Riley recommended that she return to work and see how she made out.
She returned to work and attended Dr. Riley only infrequently, the last being in October of 1969. She testifies that during this period, and indeed even into the present time, she suffers pain in her neck when she gets into certain positions, and has some weakness in her knee. During the course of her treatment it was discovered that she had a degenerative arthritic condition in her cervical spine, consisting of extensive osteoarthritic changes of the cervical spine itself, mild subluxation of the first cervical vertebra, C-l and C-2, as well as disc space narrowing of the space between C-4 and C-3. Dr. Riley last saw her on October 8, 1969, and concluded that he had done about all he could for her, and that she would still continue to have complaints of pain periodically.
The jury awarded plaintiff a verdict of $5,000.00. Since it was a general verdict, we are unable to establish precisely the basis for the award. However, we note the following items of special damage which are amply proven in the record.
Dr. Cherrie — $115.00
Dr. Riley — $343.00
Dr. Phillips — $50.00
Dr. Berkett — $15.00
Flint-Goodridge Hospital — $269.05
TOTAL: $792.05
Additionally, it was stipulated that Miss Alexander was employed by Maison Blanche at a rate of pay of $52.80 per week and that she did not work from December 11, 1968 until July 28, 1969, a total of 32 weeks, losing the sum of $1,716.00. Since the record clearly shows that Miss Alexander is entitled to recover her special damages which thus amount to $2,508.05, we necessarily conclude that the jury awarded these damages and that the balance of the verdict was for her injuries, pain and suffering.
It is our opinion that the award made by the jury should be increased. We are cognizant of the jurisprudence and codal provisions relating to the amendment of the jury award by the appellate court, however, in this case we consider the award to be manifestly insufficient. Miss Alexander was under treatment by physicians from December 13, 1968 to October 19, 1969. She could not return to work from the date of the injury until July, 1969, at which time the doctor let her return to work, not under the belief that she was recovered, but simply because it may have been helpful to her condition to return to work, and because of her economic necessity. It is noted that Dr. Riley found muscle spasms in her neck as late as September, 1969. We note that she had degenerative arthritic changes, and of course some of the pain and suffering is related to that condition, which predated the accident. However, there was no evidence that she suffered any pain or discomfort prior to the accident, and has suffered considerably since then, due, in part at least, to the exacerbation of this condition. We conclude that she is entitled to recover the sum of $5,000.00 for her injuries, pain and suffering, in addition to the special damages, making a total of $7,508.05.
For the foregoing reasons, we are of the opinion that the jury verdict and judgment below should be amended and increased to the sum of $7,508.05, and as amended should be affirmed.
All costs assessed against the defendant-appellant.
Amended and affirmed.